In the United States District Court
for the Middle District of Pennsylvania

Robert Pritchett ) Civil Action: TBA
    Plaintiff ) 3:18cv 1382
)
v. ) Bivens Complaint
)
Unknown Lt., )
Case Manager Parker; )

FILED
SCRANTON
JUL 12 2018
PER _____
DEPUTY CLERK

## Bivens Complaint

## Introduction

This is a Bivens action brought by the above plaintiff, for agonizing intentional infliction of emotional distress, failure to prevent harm to plaintiff, and supplemental state of Pennsylvania tort claim for failure to protect

## Parties

### A. Plaintiff

Plaintiff at the time of this complaint and the injuries suffered, was an inmate at the FCI Allenwood Medium facility located at FCI Allenwood Medium, Box 2000, White Deer PA 17887

### B. Defendants

#### 1. Unknown Lieutenant

At all times during this complaint and the injuries suffered, the unknown lieutenant was employed at the FCI

Allenwood Medium facility, located in White Deer PA 17887, employed as a federal official

2. Case Manager Parker

At all times in the complaint and the injuries suffered, Case Manager Parker was employed at FCI Allenwood Medium facility located in White Deer PA 17887, employed as a federal official

## Statement of Facts

1. On or about the 14th of May 2018, plaintiff hurt his foot after jumping off the top bunk in his cell

2. Despite the pain, he still went into his job duty at the kitchen. While there, his pain became intolerable, and he was eventually sent to the medical department

3. After being seen by the nurse, plaintiff was told to wait a little while for his PA to check on him

4. His PA - Powanda looked after his foot and decided that plaintiff must be on a bottom bunk pass. In doing so, Powanda called the plaintiff's Case Manager to clear plaintiff's bottom bunk status, which was cleared by Case Manager Parker

5. In order for this to be cleared, Parker had to transfer the plaintiff to a different cell which had an open bottom bunk

6. Once plaintiff arrived to his unit, the C.O. Vagez told the plaintiff that he was moved to cell 121. But, upon entering the cell, plaintiff realized that the other occupant was a Tanjo Blast gang member

2

7. The other inmate told the plaintiff that he isn't coming into that cell, and if he does, there were going to be problems. Plaintiff did not want to get harmed

8. In order to avoid a serious fight, plaintiff went back to the C.O. (Yagez) and immediately asked for a lieutenant. The C.O. called the lieutenant, and told the plaintiff to go down there and talk to him immediately

9. Before leaving to talk to the Lt., Parker came out of the office and the plaintiff tried to explain the situation to her also. But, Parker told the plaintiff that cell was the only one with an open bottom bunk, and if they were going to get into a fight to just hurry up and go fight

10. Plaintiff instead headed down to the lieutenant's office. Once there, they asked the plaintiff what was going on. And, the plaintiff explained to them the situation

11. The lieutenant called Parker, but afterwards told the plaintiff that Parker was not going to move the plaintiff to a different cell. Nor was the lieutenant going to move the plaintiff to another cell or unit

12. Upon plaintiff's arrival back to the Unit, he again tried to have Parker move him to someplace different. She told him that he has to stay in the cell and it wasn't her fault that he hurt his foot and it was dumb for him in the first place

13. Unfortunately, plaintiff made it in the cell for only one inmate count. While in there, the other inmate threatened him again and told him that he needed to find a way out of the cell again, or it was going to get bad for the plaintiff. This really scared plaintiff and he knew he was going to get hurt if he didn't find a way out of the cell, or a new one

14. Also, plaintiff was being treated for serious psychological issues, and the cell-situation was causing him to have some serious psychological breakdowns

15. This psychological issue was pushed over the edge once the plaintiff's Tango Blast cell-mate told him he was going to have to get out, find a way out, or he was going to stab the plaintiff

16. After trying to talk to some other inmates to work out a different cell-arrangement, and being unable to, the plaintiff, fearful of being stabbed at this point, went into the C.O.'s office. After not being able to leave the cell, despite the threat of being stabbed, plaintiff had a breakdown

17. During the breakdown, plaintiff sliced his arm open in front of the C.O. Plaintiff was immediately taken into custody and escorted to the suicide watch

18. He remained in suicide watch for a little over a week, while his arm healed. Afterwards, he was taken to SHU while placed under a SIS investigation, and has been in SHU for over 2 months

## Statement of Claims

A. Claim 1 - Failure to Prevent Harm

1. Plaintiff claims that defendants Parker and the unknown lieutenant failed to prevent harm to him

2. He unequivocally explained to Parker and the lieutenant that he was going to be harmed, that he was being threatened, and eventually to get out or he'd be stabbed or killed

4

3. Instead of easily correcting the problem by moving him to either onto a different unit or to different cell, they turned him over to the mercy of an inmate who wanted to stab him and kill him

4. Moreover, this caused tremendous stress upon plaintiff to the point of him having a psychological breakdown which in turn made him hurt himself

B. Claim 2 - Intentional Infliction of Emotional Distress

1. Defendants, Parker and the lieutenant, engaged in outrageous behavior, in that they knew the plaintiff was being threatened with severe bodily harm and needed to be moved

2. When the defendants were told of this, Parker told plaintiff to fight it out. Meanwhile, the lieutenant told him that he was not going to do anything for plaintiff either. This is intentional and outrageous

3. Also, in leaving the plaintiff among a cell-mate who told him he was going to stab and kill him, this caused plaintiff's pre-existing psychological issues to come forth, which in turn caused the plaintiff to have a serious breakdown

4. This breakdown was so tremendous and severe, that he sliced his own arm, and was placed into suicide watch

C. Claim 3 - Failure to Protect (Supplemental State Tort)

1. Here, plaintiff was placed under the conditions posing serious risks and harms

5

2. Despite warning both Parker and the lieutenant that he was facing a life and death issue between his cellie, who had threatened to stab him, they let him remain in that zone of danger

3. And instead of easily moving him to a different cell or unit, they were indifferent to the dangers faced by plaintiff, and told him to fight it out, and remain in the cell with a person who wanted to stab him and kill him

4. This then caused plaintiff to experience a serious psychological breakdown which caused plaintiff to slice his own arm to get out of the situation he was facing

## Jurisdiction

### A. Bivens

Federal courts have jurisdiction over any bivens complaint upon federal officials filed within 2 yrs of injury per Pennsylvania law

### B. Supplemental Jurisdiction

Upon being satisfied of its own jurisdiction over the bivens' cause of action, federal courts may then exercise its jurisdiction over any supplemental state tort causes of action

## Exhaustion

1. Prior to suit a plaintiff must first generally exhaust any and all remedies

2. In the BOP context, this means that the plaintiff must file: a) BP8, b) BP9, c) BP10, d) BP11

3. However, the plaintiff need not exhaust his remedies, if said remedies are: a) unavailable, b) futile, c) being thwarted, d) or will cause irrepable harm

4. As applied here, the plaintiff has asked for his grievances, both while in SHU and in suicide watch

5. The week in suicide watch amounted to him being told that he is not permitted to have any grievances, or much of anything else, until the psych. dept. clears him for release

6. All through the 2 months while in SHU, he has asked various staff members that come to SHU, but none of them would send him any grievances.

7. Since under BOP policy, an inmate has 20 days from the day of the triggering event, to file the first step of the grievance, the plaintiff has now been shut out of being able to start his exhaustion process, due to the lack of any BOP staff giving him the requisite forms in time

## Relief and Remedies

### A. Punitive Damages

1. Plaintiff seeks punitive damages as determined by the Court

### B. Compensatory Damages

1. Plaintiff also seeks compensatory damages as determined by the Court

## Certificate of Service

On this July day of 8, 2018, one true copy of the enclosed Bivens Complaint was mailed to:

Clerk of Court
U.S. District Court
235 North Washington Ave
Box 1148
Scranton PA 18501

7/8/2018
Dated

Robert Pritchett

## Certificate of Service

I, hereby verify that on this July day of 8, 2018, one true copy of the enclosed, Declaration, was sent to the below address by first class mail:

Clerk of Courts
U.S. District Court
Middle District of PA
235 North Washington Ave
Box 1148
Scranton PA 18501

7/8/2018
Dated

Robert Pritchett

INMATE NAME/NUMBER: Robert Pritchett 26767-056
FEDERAL CORRECTIONAL COMPLEX-ALLENWOOD FCI
P.O. BOX 2000
WHITE DEER, PA 17887

HARRISBURG PA 171
09 JUL 2018 PM 4

Clerk of courts
U.S District court
middle District of PA
235 north washington Ave
Box 1148
Scranton PA 18501

JUL 06 2018
RECEIVED
SCRANTON

JUL 1 2 2018
PER_____
DEPUTY CLERK

Special

legal mail